Judge Underwood
delivered the Opinion of the Court.
This controversy grows out of interfering land claims.
In April, 1792, a patent, for five thousand acres of land, issued in behalf of Payne and Morgan.
In November, 1801, a patent issued to Daniel Curd, for eight hundred acres of land.
*61 In June, 1800, a patent issued to Thomas,. Robert, Samuel, Margaret and Willouby Young, heirs of Robert Young, deceased, for one thousand acres of land.
The tract of Payne and Morgan covered the whole of the other two tracts. The tract of Curd interfered with that of the Youngs, to the extent of about four hundred acres. All the surveys were bounded on one side by the Ohio river.
It seems that the tract of Young was divided, by allot-ing to Thomas two hundred acres off the upper end ; to Robert, who had purchased Samuel’s interest, four hundred acres adjoining Thomas; to Margaret,who married Littleton Cook, two hundred acres adjoining Robert, and to Willouby, two hundred acres, off the lower end.
The lots of Thomas and Robert did not interfere with the survey of Curd.
In October, 1825, Margaret Cook, her husband being then dead, conveyed her two hundred acres to Lively, and in April, 1827, Thomas, Robert and Willouby Young (Samuel being dead,) conveyed their interest in the same two hundred acres of land to Lively; and in their deed they state that Littleton Cook and his wife had conveyed the same laud to Lively, by deed, dated 1st of February, 1815 ; but at that time a legal division of the claim of Young had not been made.
By the deeds of 1825 and 1827, Lively certainly obtained all the title which the patentees could part with, under the grant to the Youngs. As the deed made by Cook and wife, in 1815, is not exhibited, we cannot tell whether it is good for any purpose. It may not have passed Mrs. Cook’s title.
In September, 1814, Curd conveyed the land granted' to him, to Ball. In March, 1822, Payne and Morgan conveyed to Ball so much of their tract as covered Curd’s patent. On the 16th of July, 1824, John Morgan, as executor of the will of Charles Morgan, the co-patentee with Payne, conveyed twenty three acres, lying on the outside of Curd’s patent, and within the limits of Young’s patent, to Ball. These twenty three acres, it appears from the connected plat, constitute the *62 whole of the land claimed by Lively, not covered by Curd’s patent.
The act providing, “that not more than two new trials shall ho grantedto the same party in the same cause ’ does not so operate as to prevent the court of appeals from reexamining the questions oflaw reversing, and remanding the cause/br a new trial,after three or more verdicts for the same ■ party.
Settlement and continued possession relied on by defendant.
In October, 1827, Ball commenced this action of ejectment against Lively. The latter obtained two verdicts in his favor, both of which were set aside, and new trials awarded. The jury found a third verdict in favor of Lively, and Ball has appealed to this court.
The first point presented, is, whether a fourth trial can be ordered by the court, if upon investigation, it should be found that the circuit c ourt erred in deciding anj question of law upon the last trial. The act of 1796, regulating civil proceedings, declares that “ not more than two new trials shall be granted to the same party in the same cause.” The object of this act was to give to the trial by jury ultimate validity, even in opposition to the opinion of the court, and at the same time, to give the judges a limited control over the verdicts of juries, and thus enable the court to correct their errors, by granting opportunities for revising the verdict. If, however, after two new trials, a third jury should find in the same way, that verdict was to be final. The intent of the statute was to guard against the passions, the prejudices, the excitements and errors of jurors, and yet to secure their independence; but it was never designed to consecrate the errors of the court, and to place them beyond the supervisory control of the appellate tribunal. So this court has heretofore decided. Burton vs. Brashear, 3 Marshall, 278.
We shall proceed to examine the merits of the controversy.
It is very clear that the paramount title was with the appellant, and that he ought to have succeeded, unless some one or more of the grounds assumed in the defence should have prevailed.
The appellee relied mainly «pon an adverse and continual possession, by actual settlement and residence upon the land, for more than seven years previous to the institution of the suit against him. The limitation of twenty years was also relied on.
The facts seém to be these. Robert Young settled, in March, 1806, upon the tract patented to him and his *63 brothers and sisters, but on the out side of Curd’s patent lines. The possession seems to have been continued from this time. There was no division among Young’s heirs previous to the settlement thus made by Robert, In 1814, the two hundred acres claimed by Lively, were laid off for Littleton Cook, in right of his wife; but previous to that time no lines and corners had been made for any one of the heirs, although it was understood among them how the tract should be divided. In March. 1815, Lively settled upon the two hundred acres, laid off for Cook, within Curd’s patent boundary, and continued his residence thereon up to the commencement of this suit, in October, 1827.
Facts relied on by plaintiffs, to counteract the effect of continued possession in defendant.
With a view to destroy the effect of the statute of limitation operating upon the above facts, the appellant gave in evidence the record of an action of ejectment, instituted by Morgan’s lessee, against Lively and others, in December, 1815, in which the plaintiff recovered a judgment for an undivided moiety of so much of the Improved land as Lively had in actual occupancy, within the boundary of the patent of Payne and Morgan and without the boundary of a patent in the name of William Roberts. This judgment was rendered in July, 1818. The appellant also gave in evidence transcripts of the records of two scire facias cases against Lively. In one of these cases it appears, that the court, in April, 1825, gave judgment for execution, in favor of John Doe, on the demise of John Morgan, executor of Charles Morgan, against Lively, for his term yet to come, of and in an undivided moiety of so much of the improved land as Lively had in actual occupancy,within the boundary of the patent of Payne and Morgan, and without the boundary of the patent to William Roberts. In the other case, it appears that the court, at the same term, gave judgment for execution, in favor of John Doe, on the demise of Henry Payne, against Lively, for his term yet to come, of and in two thousand five hundred ac.res of land. Writs of habere facias issued in pursuance of the judgments in the scire facias cases, on the 24th of August, 1825; and on the next day, the sheriff, in pursuance of these writs, delivered possession to Ball, *64 by order -of the attorney of the lessors. On the day that Lively was turned out by the sheriff, he and Ball entered into a written agreement, in which it is recited, that Henry Payne and Charles Morgan, respectively recovered on their demises in three actions of ejectment, each an undivided moiety of five thousand acres of land in Campbell county, on the Ohio river, against said Lively and others; that judgment had been revived by stive facias; that Ball had purchased of Payne and the representatives of Morgan, the land in Lively’s possession, and that writs of possession had been issued, and possession delivered to Ball; whereupon in consideration of the friendship between the parties, and one dollar, Ball leases the premises in Lively’s possession to him, until the 10th day of the ensuing March, on which day Lively agreed to surrender the possession to -Ball, and pay the dollar.
, the result of Ime’notffect upon a controversy.-nut, the vendee of a party who has obtained a judgment of eviction, may enforce the judgment (by sci. fa. ye.) without fraud.
It was proved that Curd took possession of the tract patented to him, and which was surveyed, in April, 1785, by tenant, in 1796, on the outside of the tract patented to the Youngs; that, in 1797, the tenant built a cabin within Young’s boundary — both Curd and the tenant for Curd intending to hold possession of Curd’s entire survey; that the cabin so built was never inhabited, that Curd’s possession by his tenants continued up to 1814, or 16, when he sold, and delivered possession, to Ball, who has continued in possession, actually residing on the land, ever since. Ball’s, dwelling house is .outside the lines of Young’s survey; but, in 1818, Ball extended his improvements over the line of Young, into his tract. '
We are of opinion that Lively has connected himself with the title of the Youngs, in such manner as to authorize him to rely on his settlement and residence for seven years, in bar of the appellant’s action, unless this defence is overruled by something in avoidance.
The matter relied on in avoidance, grows out of the eviction of Lively and his contract thereafter to hold as Ball’s tenant. If the eviction and contract be the result of fraud on the part of Ball, we readily concede, that they should have no effect upon the controversy. They seem to have .been regarded in that light in the case of *65 forcible detainer between the parties, reported in 2 J. J. Marshall, 181. It is proper, however, to observe, that the evidence in that case, and in the present, is different. It now appears that Morgan and Payne obtained their judgments in ejectment against Lively, previous to 1822. They conveyed to Ball in that year. Having transferred their title to him, we perceive no reason why he might not properly proceed, in their names, to revive the judgments, in order to obtain possession of the land he had purchased. The vendee may take steps to enforce a judgment in favor of his vendor, and which by the purchase inures to his benefit, without being guilty of fraud.
After a judgment of eviction, the plaintiff, or his ven-dee, before or after the delivery of possession —may make a lease of the premises,which the tenant may accept, and thus change his tenure from adverse to amicable, and be precluded from disputing the title of his lessor.
As to the errors or irregularities in the scire facias cases, if there be any, we cannot correct them, or regard them, until regularly brought up for revision. They are not before us for correction now.
If Ball, without fraud, proceeded to enforce the judgments in favor of‘ his vendors, it follows that he could, lawfully and without fraud, lease the land to Lively, either before or after the sheriff delivered possession under the writs of habere facias, it was certainly competent for Lively, after judgment of eviction against him voluntarily to acknowledge the better right, and accept a lease, without waiting until he was actually turned out by habere facias. After the execution of the habere facias, and the delivery of possession to Ball, the acceptance of a lease, would bring Lively into possession as Ball’s tenant, sodhat he would be estopped to deny Ball’s title, provided no fraud was practised to induce Lively to take the lease. If Ball, by fraudulent means, induced Lively to. accept a lease, and become his tenant of land which had not been recovered in the actions of ejectment, the lease and tenancy, being the work of fraud, might be disregarded. But even then, if Lively had been turned out of possession by process upon the judgments in ejectment, and the possession delivered to Ball, he would have a right to recover in this action, all the land which had been legally delivered to him by the sheriff', under the writs of habere facias.
If the sheriff, in executing a ha-bere facias, deliver more land than the judgment is for, the delivery is good to the extent of the recovery,— and void for the surplus.
The possession delivered under a habere faci-as, has relation hack to the com meneement of the suit, and altho ’ the holding of the tenant du ring the time between service of the declaration and notice, and execution of the habere facias, was adverse to the plaintiff,that period cannot he included in the time relied on to bar the pl’tf (or those claiming under him)in any subsequent contest for the land.
Where the junior grantee extends his improvement over the line of the older grantee in possession, and afterwards acquires a third title paramount to both, the possession under the new title, will not be deem ed to extend o-yer the whole claim, but will be restricted to the enclosure.
*66 The sheriff could not legally deliver to Ball more-land than his vendors had recovered by their judgments. But to that extent, when the possession was transfered to Ball, by legal process, it had effect by relation to the commencement of the actions of ejectment , so as to conclude Lively, and prevent him from taking into computation, the time running between the service of the declaration and notice, and the execution of the habere facias, in support of his defence under the statutes of limitation.'
Without attending to the effect produced on the possession of Lively, by the prosecution of the ejectments against him to judgment, and the execution of the writs of habere facias, the court instructed the jury, “that if they believed the defendant and those under whom he claimed, had had seven years continued adverse possession of the land in controversy, by actual settlement thereon, under an interfering entry, survey or patent, adverse to the claim of the plaintiff’s lessor, under a connected title, in law or equity, deducible of record from the Commonwealth, prior to the commencement of this suit, the law was for the defendant.” This instruction, applied to the, evidence before the jury, was erroneous. In deciding upon the defence resulting from the statutes of limitations, it did not allow the jury to dis-, regard the time running between the commencement of the ejectments, and the execution of the writs of habere facias. Lively’s possession, during that period, was not amicable, but adverse. The jury would, therefore, understand the instruction as a peremptory direction to find for the defendant, when they might have found otherwise, had they been told that the legal effect of the, judgments in ejectment and carrying them into execution was such as to exclude the time between the commencement of the actions and the delivery of possession under the writs of habere facias from the computation. For this cause the judgment must be reversed.
In 1818, Ball extended his improvement into Young’s patent. In 1822, Ball purchased from Morgan and Payne. It may be proper to decide the effect of this extension of the improvement in 1818. At that time *67 Ball held under Curd’s patent only, and as Lively was then in the actual possession of the two hundred acres allotted to Mrs. Cook, claiming to the extent of its boundaries, under the elder grant, extending the improvement over the line of Lively, did no more than give to Ball possession in fact of so much ground as he enclosed over the line. His purchase, in 1S22, from Payne and Morgan, did not enlarge his possession within Lively’s boundaries, because Lively, at that time, would have been completely protected by the limitation of seven years, but for the proceedings in the actions of ejectment previously instituted. These proceedings cannot be coupled with the extension of the improvement in 1818, so as to make them assist each other. They can only have such validity as they are separately entitled to.
Bringing an ejectment, and enclosing part of the land — independent acts, cannot aid each other.
Record of scire facias, admitted, without oh jection, in the court below, as proof of the original judgment, will be allowed the like effect here.
A deed of land, in the possession of an adversary claimant, made since 1st July, 1824, is void.
It has been insisted that we ought not to regard the action of ejectment instituted by Payne, because there is no evidence of it, except that furnished by the record in the scire facias case. We think the objection untenable, because that record was admitted without objection, and no exception taken for want of the original record.
As to the deed of 1824, under which Ball claims twenty three acres, it is sufficient to remark, that it was executed after the act of January 7th, 1824, concerning cham-perty and maintenance took effect, and that if Lively was in the adverse possession of the land at the time of the execution of the deed, it was void.
Judgment reversed, with costs, and cause remanded for a new trial.